FISHER & PHILLIPS LLP
SCOTT M. MAHONEY, ESQ.
Nevada Bar No. 1099
DAVID B. DORNAK, ESQ.
Nevada Bar No. 6274
300 S. Fourth Street, Suite 1500
Las Vegas, NV  89101
Telephone:  (702) 252-3131
smahoney@fisherphillips.com

FISHER & PHILLIPS LLP
JOHN E. LATTIN, IV, ESQ.
California Bar No. 167876
2050 Main Street, Suite 1000
Irvine, CA  92614
Telephone:  (949) 851-2424
jlattin@fisherphillips.com

Attorneys for Plaintiff Ecolab, Inc.

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| ECOLAB, INC. | Case No. 2:16-CV-02679-APG-CWH |
| Plaintiff, | **DECLARATION OF SEAN SMITH IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
| vs. | |
| JONATHAN KRASNER, LUKE ATWELL, and REBEL CHEMICAL, INC. | |
| Defendants. | |

I, SEAN SMITH, declare as follows:

1. I am the Assistant Vice President, Institutional Field Sales, Pacific Southwest Area, for Plaintiff Ecolab, Inc. (hereafter "Ecolab"). I have personal knowledge of the facts stated herein, and if called upon to testify, I could do so competently.

2. Plaintiff Ecolab is engaged in the highly competitive business of providing commercial hygiene products and services including, but not limited to, products such as dishwashers, laundry, housekeeping equipment, soap, sanitizing and cleaning products to a broad spectrum of businesses such as restaurants, hotels, and schools.

3. In order to protect its confidential information and customer relationships, Ecolab, among other things, requires appropriate employees to execute employment agreements containing restrictive covenants tailored to protect those valuable company assets.

4. Defendant Krasner worked for Ecolab as an Ecolab District Sales Manager. As a condition of his employment with Ecolab, Defendant Krasner executed an Employee Agreement with Ecolab on February 26, 2010 which contains restrictive covenants concerning confidentiality and return of property. A true and correct copy of Krasner's Employee Agreement is attached hereto as **Exhibit "1", pp. 3-4**.

5. Defendant Atwell worked for Ecolab as a Street Sales Development Manager. As a condition of his employment with Ecolab, Defendant Atwell executed an Employee Agreement with Ecolab on September 30, 2011 which contains restrictive covenants concerning confidentiality and return of property. A true and correct copy of Atwell's Employee Agreement is attached hereto as **Exhibit "2", pp. 6-7**.

6. Both Defendant Krasner and Defendant Atwell had access to Ecolab's confidential business information. The confidential business information to which Defendants Krasner and Atwell had access to (and did not return upon their departure from Ecolab) includes specific contract pricing lists for current Ecolab contracts and

accounts; customer listings and information for all districts within the Las Vegas area market; proposals to current and potential Ecolab customers; Ecolab employee lists and contact information; Ecolab sales reports which detail customer spending and profit and loss data; proprietary equipment pricing; Ecolab Distributor lists and stocking reports; Ecolab offerings related to what Ecolab sells; Ecolab sales training materials and how to solicit and interact with current and potential clients; and proprietary information regarding industry information such as chemical titrations and use cost information.

7. Defendant Krasner's and Defendant Atwell's Employee Agreements contain a non-solicitation covenant which provides as follows:

> During employment with the Company and for a period of one (1) year immediately following the termination of his employment with the Company, the Employee will not service, sell or solicit the sale of any COMPETING PRODUCTS or COMPETING SERVICES to any customer of the Company with whom the Employee did business or attempted to do business, or whose accounts was supervised by or assigned to the Employee or with regard to which the Employee received commissions or other compensation, at any time during the twelve (12) month period immediately preceding the termination of his employment. During said one year following termination, the Employee also will not assist any COMPETING FIRM to engage in the activities prohibited by the foregoing sentence. A COMPETING FIRM means any person or organization (including one owned in whole or in part by the Employee) which is engaged in the development, production, use, marketing or sale of a COMPETING PRODUCT or COMPETING SERVICE. A COMPETING PRODUCT or COMPETING SERVICE means any product or service which is the same as, or similar to, and competes with, a product or service of the Company which was part of the product or service line handled by the Employee, or persons supervised by the Employees, or about which the Employee received CONFIDENTIAL INFORMATION during his last two (2) years of employment by the Company.

8. Defendant Krasner and Defendant Atwell's Employee Agreements contain a confidentiality covenant which provides as follows:

> The Employee will not at any time, both during and for one (1) year immediately after his employment by the Company, communicate or disclosure to any person, firm or corporation, or use for his benefit or for the benefit of any other person, firm or corporation, directly or indirectly, any of

the Company's CONFIDENTIAL INFORMATION acquired by the Employee while employed by the Company.

9. Defendants Krasner and Atwell voluntarily resigned from their employment with Ecolab. Upon submitting their resignations, Defendants Krasner and Atwell refused to advise Ecolab of their career plans.

10. Shortly after Defendant Krasner's and Atwell's departure, they joined with another former Ecolab employee, Robert Burton. Together, Krasner, Atwell, and Burton created a new company called Rebel Chemical.

11. Rebel Chemical directly competes with Ecolab by offering commercial hygiene products and services in the Las Vegas market.

12. While at Ecolab, Defendant Krasner, a District Sales Manager, directly managed Defendant Atwell, a Street Sales Development Manager. Defendant Krasner was only directly involved in selling to one of four Ecolab geographic districts in the Las Vegas market while he was a District Sales Manager. Defendant Atwell was involved in and called on clients and potential clients in all four Ecolab Las Vegas Districts. However, at Rebel Chemical, Defendants Krasner and Atwell have switched roles, such that Defendant Krasner is now directly selling to clients in parts of town which he did not oversee as Ecolab District Sales Manager and Defendant Atwell has taken a more managerial role in an apparent attempt to avoid the appearance that he is selling to clients he previously called on while at Ecolab.

13. Upon resigning from Ecolab, Defendant Atwell and Defendant Krasner were contractually obligated to return to Ecolab all of its property including Company confidential information.

14. Defendant Krasner did not return any company information whatsoever including hard copies of documents and/or in electronic form. Defendant Krasner also improperly erased and/or deleted Ecolab company information from his company issued computer.

15. Defendant Atwell likewise did not any return Ecolab confidential information, including information that he had sent to his personal e-mail address

without authorization, and in violation of Company policy. Defendant Atwell also failed to return an Ecolab badge which allowed him to gain access to a vendor at a local airport as a purported Ecolab employee.

16. Defendant Atwell, shortly before his departure from Ecolab and during work time, sent confidential Company information to his personal e-mail address in violation of Company policy and in breach of his fiduciary duties owed to Ecolab.

17. Among the e-mails improperly sent by Defendant Atwell to his personal e-mail address were an e-mail he sent just hours before his departure on his last day at Ecolab which contained Ecolab confidential business information including customer identities and contact information, a true and correct copy of which is attached as **Exhibit "3", pp. 9-10**.

18. Another email that Defendant Atwell sent to himself was an e-mail survey of photos take at customer location, a true and correct copy of which is attached as **Exhibit "4", pp. 12-46**.

19. Defendant Atwell also sent himself a hygiene survey for a large hotel customer which contained detailed information regarding the customer's needs and requirements, a true and correct copy of which is attached as **Exhibit "5", pp. 48-50**.

20. Defendant Atwell also sent himself multiple e-mails to his personal e-mail address containing customer agreements containing, among other things, pricing information and contractual terms including information when the product and/or service agreement would expire, true and correct copies of examples of which are attached as **Exhibit "6", pp. 52-78**.

21. Defendant Atwell just prior to his departure sent without any apparent legitimate business purpose an e-mail to Defendant Krasner containing a prospect list identifying customers and information concerning them, a true and correct copy of which is attached as **Exhibit "7", pp. 80-82**. This email was especially bizarre because Defendant Atwell forwarded to Defendant Krasner a list of customers for a different

district than the one that Defendant Krasner managed. There was no purpose for Defendant Krasner to have access to such a list, especially weeks before his planned departure from Ecolab.

22. Defendants Krasner and Atwell have solicited Ecolab customers on behalf of Defendant Rebel Chemical, Inc., in violation of the non-solicitation covenant of their Employment Agreements, and they have used Ecolab Confidential Information in violation of the confidentiality covenant of their Employment Agreements.

23. Specifically, at the time of their respective resignations from Ecolab, Defendant Krasner was responsible for accounts that generated revenues for Ecolab of approximately $8 million annually, and Defendant Atwell was responsible for accounts that generated revenues for Ecolab of approximately $1 million annually, which included sales volume of approximately $500,000.00 and another approximately $500,000.00 in accounts on which he was actively working. Defendant Krasner and Defendant Atwell had access to Confidential Information regarding these accounts.

24. Indeed, in the short time that Rebel Chemical has been in operation, the Company operated by Krasner and Atwell has already converted numerous Ecolab clients.

25. For example, Rebel Chemical converted Ecolab client Pot Liquor. On or about November 8, 2016, Defendant Krasner called Ecolab customer service and informed Ecolab customer service that Defendant Krasner had just sold this account and that Ecolab would no longer be servicing the account and should pick up its equipment. Defendant Krasner sold to Pot Liquor while he was at Ecolab. The value of the Pot Liquor account is approximately $15,000.00 annually.

26. As another example, on or about November 11, 2016, Defendant Krasner again called Ecolab Customer service and instructed Ecolab to pick up its equipment which serviced Ecolab client Bratalian because Defendant Krasner had just also sold that account for Rebel Chemical. The value of the Bratalian contract is approximately $4,000.00 annually.

27. Defendants have also worked to convert Ecolab customer Greens and Proteins. Defendant Krasner was in charge of selling to Greens and Proteins when he was at Ecolab. Since joining Rebel Chemical, Defendant Krasner has already sold directly to one Greens and Proteins location, in direct violation of his Employment agreement. On December 28, 2016, Defendant Krasner called Ecolab customer service and told them to pick up their equipment. The value of the Greens & Proteins account is approximately $30,000.00 annually.

28. Defendants have also converted Ecolab client Herbs & Rye. The value of the Herbs & Rye contract was approximately $30,000.00 annually.

29. More recently, Defendant Rebel Chemical approached a multi-unit customer to which Defendant Atwell was responsible for selling to while with Ecolab. A true and correct copy of Rebel Chemical's proposal to this Ecolab customer is attached as **Exhibit "8", pp. 83-89**.

30. Other Ecolab accounts that Defendants have called on and worked to convert include Andres, I love Sushi, Blueberry Hill Group, and Cabo-Wabo-Hex-Chateau.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 11th day of January, 2017, at Las Vegas, Nevada.

_____
SEAN SMITH

# CERTIFICATE OF ELECTRONIC SERVICE

This is to certify that on the 11th day of January, 2017, the undersigned, an employee of Fisher & Phillips LLP, electronically filed the foregoing **DECLARATION OF SEAN SMITH IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** with the U.S. District Court, and a copy was electronically transmitted from the court to the e-mail address on file for:

Brian K. Berman, Esq.

By: /s/ Brenna Kacsuta
An employee of Fisher & Phillips LLP